UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HECTOR MARTINEZ-TORRES | ) | |
| | ) | |
| VS. | ) | C.A. No: 05-108-T |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**UNITED STATES' OBJECTION TO THE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Now comes the United States and hereby objects to the defendant's Motion to Vacate, Set Aside, or Correct Sentence for the reasons stated in the attached memorandum of law.

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

RICHARD W. ROSE
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2005, I caused to be sent via first class regular mail a true copy of the within United States Objection to the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 to:

Hector Martinez-Torres
Prisoner Number 05382
P.O. Box 1000
FCI Otisville
Otisville, NY 10963

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HECTOR MARTINEZ-TORRES )
)
VS. ) C.A. No: 05-108-T
)
UNITED STATES OF AMERICA )

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO THE PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. Introduction

On June 25, 2004, the defendant pled guilty to a five count indictment which charged conspiracy to distribute 50 grams or more of cocaine base and heroin (21 U.S.C. §§ 841(a)(1) and b(1)(A)(iii), 846 and 18 U.S.C. §2); Counts II through IV charged distribution of 5 grams or more of cocaine base (21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2); and Count V charged distribution of heroin (21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. §2). In total weight, the defendant admitted to being responsible for 84.4 grams of cocaine base in the form known as "crack," and 12.2 grams of heroin.

The Presentence Report determined that the defendant was a career offender pursuant to USSG § 4B1.1(A), which would have resulted in an adjusted base offense level of 34 and a criminal history category of VI. The resulting sentencing range was 262-

327 months with a ten year mandatory minimum.[1] Without objection from the government the Court granted the defendant a downward departure pursuant to USSG § 4A1.3(b)(1) for an over-represented criminal history.

Thus, on November 5, 2004, the Court sentenced the defendant to 235 months as to Counts I-V to be served concurrently with each other.[2] The defendant did not appeal his sentence and his conviction was the result of a plea. On March 9, 2005, the defendant filed the instant petition.

In his petition, the defendant raises four claims: 1) his sentence is in violation of the Sixth Amendment because the statutory maximum was in excess of his admitted facts; 2) defendant claims ineffective assistance of counsel for his counsel's failure to successfully challenge a prior conviction listed in ¶ 26 of the Presentence Report; 3) he claims ineffective assistance of counsel for his counsel's failure to investigate potential downward departure factors relating to the defendant's mental health; and 4) a more general claim of ineffective assistance during the presentence and sentencing phases. For all the following reasons, the defendant's petition

---

[1]Pursuant to the plea agreement in this case the government agreed not to file an information pursuant to 21 U.S.C. §851 which would have established a mandatory minimum of 20 years.

[2]The defendant's petition on numbered page 2, line number 3, incorrectly lists the length of sentence as 262 months.

should be denied.

## II. Argument

### 1. The Defendant Is Not Entitled To Relief Under 28 U.S.C. § 2255

The defendant has filed his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 which states in pertinent part:

> A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The motion is required to be filed within one year after entry of final judgment. Id. The movant's motion has been timely filed.

### 2. Though Timely - The Defendant Has Waived His Right To Challenge His Status As a Career Offender

In his first claim, the defendant seems to challenge his status as a career offender. He also seems to be challenging the fact that the maximum statutory penalty in Count I is life imprisonment. This claim should be denied because it was not raised on direct appeal and is therefore defaulted. Defaulted claims generally cannot be heard on collateral review

unless the applicant shows "cause" for each failure to raise the claim and "actual prejudice" resulting from the error he alleges. See United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Thompson, 501 U.S. 732, 750 (1991). This standard is more strict than the plain error standard applied on direct appellate review of defaulted claims. Id. at 164-66. By not raising the issue on appeal it is waived and the defendant's motion should be denied.

In addition, even if reached the defendant's claim must fail. The defendant appears to confuse guideline calculation issues with the statutory maximum. In this case, the statutory maximum sentence on Count I was life imprisonment. See Indictment Count I citing to 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(iii). The Court also reviewed the statutory maximum penalties at the defendant's change of plea. Also, the defendant's sentence fell well within the statutory maximum of the Count with the lowest possible maximum sentence. (Count V, 20 years, pursuant to 21 U.S.C. § 841 (b)(1)(C)).

Also, although the defendant invokes Blakely v. Washington, 124 S.Ct. 2531, 2537 (2004) for the proposition that the maximum sentence a judge may impose must be based on "facts reflected in the jury verdict or admitted by the defendant," Defendant's Affidavit at ¶ 1, his argument ignores the fact that his status as a career offender is based solely on the fact of his prior

convictions and these are specifically excluded from Blakely and its progeny's 6th Amendment standard. See United States v. Booker, 125 S.Ct. 738, 756 (2005).

Finally, the defendant admitted the necessary facts at his change of plea. The defendant admitted that he conspired to possess with intent to distribute 84.4 grams of cocaine base in the form known as crack. See Prosecution Version at ¶ 8; Excerpt - Change of Plea dated June 25, 2004, Pgs. 6-11, (attached as Exhibit A). As such, he admitted the necessary facts and thus his sentence does not offend Booker. For all these reasons the defendant's first claim should be denied.

The defendant also seeks to raise three claims of ineffective assistance of counsel. Here too, his motion should be denied.

3. The Defendant Cannot Sustain Claims of Ineffective Assistance of Counsel

The aforementioned "cause and prejudice" standard and waiver does not apply when a prisoner alleges an ineffective assistance of counsel claim. Smullen v. United States, 94 F.d 20, 23 (1st Cir. 1996); Knight v. United States 37 F.3d 769 (1st Cir. 1994). Thus, because three of the alleged errors arise from an ineffective assistance claim - - bestowing constitutional cover - - they are not waived. While not waived, they are nonetheless unmeritorious. The Supreme Court has established a two part test

to evaluate ineffective assistance claims. Strickland v. Washington, 446 U.S. 668 (1984); Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993). A party advancing such a claim has the heavy burden of proving: 1) that his attorney's performance fell below an objective standard of reasonable effectiveness, and 2) that he was prejudiced as a result of his attorney's deficient performance. Id. To meet this burden, the defendant must establish that a counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir.), cert. denied, 115 S. Ct. 517 (1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly differential", and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (other citations and internal quotations omitted).

Even if the defendant proves that counsel's performance was objectively unreasonable the requisite showing of prejudice requires more than postulating that counsel's errors had some

conceivable effect on the outcome of the proceedings." Strickland, 466 U.S. at 694; United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) cert. denied, 114 S. Ct. 1839 (1994). A reasonable probability is probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. If a claim of ineffective assistance can be disposed of on the grounds of lack of prejudice, the court should do so. Perron v. Perrin, 742 F2.d 669, 673 (1st Cir. 1984). The defendant's motion presents such claims.

a. The Defendant's First Ineffective Assistance Claim is False

The Court need not reach the initial ineffective assistance claim because it is specious. The defendant argues that his attorney failed to successfully challenge his status as a career offender. See Defendant's Motion, Ground B, p.5. The defendant admitted, however, that the two qualifying convictions belonged to him and were not a mistake.[3]

---

[3] The government is awaiting a copy of the transcript where this specific issue was discussed and will forward it upon receipt. On information and belief it occurred on September 17, 2004, wherein the defendant admitted that the convictions listed in the Presentence Report at ¶¶ 26 and 27 were rightfully attributed to him. While there were apparently some convictions which were incorrectly attributed to the defendant but belonged to the defendant's brother, those errors were corrected. See Sentencing Transcript, dated November 5, 2004 at pages 2-4 (attached as Exhibit B.) In addition, it was the two convictions now complained of by the defendant which were the object of his downward departure motion which was granted. At no time did the defendant say he was not the individual identified in those convictions.

Because the defendant had the necessary qualifying convictions (which he admitted to) and because such convictions are excluded from any Blakely/Booker Sixth Amendment analysis - - his first ineffective assistance claim should be denied.

b. The Defendant's Second Ineffective Assistance Claim Should Also Be Dismissed

The defendant next argues that his counsel was ineffective for failing to object to whether the defendant ever felt "suicidal," Defendant's Affidavit, ¶ 3, and whether the defendant suffered physical or mental abuse as a child. Id. The defendant feels such an investigation would somehow have led to a downward departure. Even if true, the factors cited by the defendant would not have generated the circumstances necessary for the Court to have considered a downward departure.

First, physical and mental abuse as a child bears no rational relationship to the defendant selling crack and heroin. Second, departures of this sought are used sparingly. They are not "ordinarily relevant" in determining whether a departure is warranted. See USSG § 5H1.3. If considered, they must be present to a degree "substantially in excess" of that ordinarily found in such a case. See USSG § 5K2.0(a)(2)(B).

The Presentence Report in this case contains details of the defendant's abuse allegations at ¶ 39, including a comment by the defendant that he has reconciled with his mother for any past

failings. Paragraph 44 of the presentence report indicates that the defendant does have a history of mental health issues but they appear unremarkable - - or at least - - not present in any substantial degree. The defendant is a high school graduate, ¶ 46, and is a self-described professional boxer. ¶ 48.

For these reasons, and because all of this information was available to the Court at sentencing, it cannot be said that his counsel was ineffective in his representation. His counsel focused on a departure for an overstated criminal history and was successful. He might have felt that to press a weak mental health claim he risked diluting the persuasiveness of his successful claim. In any event, such a rational choice cannot be said to fall below an objective standard of reasonable objectiveness, nor can it be said that the defendant was prejudiced by his counsel's performance giving the defendant had no reasonable chance of being successful on such a claim. See Strickland v. Washington, 446 U.S. 668 (1984); Lema v. United States, 987 F.2d. 48, 52 (1st Cir. 1993). For these reasons, his second ineffective assistance claim should be denied.

c. The Defendant's Final Claim of Ineffective Assistance of Counsel Should be Dismissed

The defendant's third and final ineffective assistance claim is that his counsel's failures during the presentence and sentencing phases violated his rights under the First and Sixth Amendments to the Constitution. This appears to be a catch-all

claim combining the assertions in his first two ineffective assistance claims. The government is not sure what the reference to the First Amendment involves but in any event, because neither the career offender nor mental health claims afford the defendant any traction - - take together their collective sum is still less than zero. Here too respectfully, his final claim should be denied.

## IV. CONCLUSION

For all the foregoing reasons the defendant's petition should be dismissed.

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

RICHARD W. ROSE
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April, 2005, I caused to be sent via first class regular mail a true copy of the within United States Objection to the Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 to:

Hector Martinez-Torres
Prisoner Number 05382
P.O. Box 1000
FCI Otisville
Otisville, NY 10963

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | C.R. 03-119T |
| VS. | JUNE 25, 2004 |
| HECTOR R. MARTINEZ-TORRES, a/k/a Canales | 10:00 A.M. |
| | PROVIDENCE, RI |

BEFORE THE HONORABLE ERNEST C. TORRES
CHIEF DISTRICT JUDGE

**(EXCERPT - CHANGE OF PLEA)**

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | U,S, Attorney's Office<br>By: Richard W. Rose, Esquire<br>50 Kennedy Plaza<br>Providence, RI 02903 |
| FOR THE DEFENDANT: | Joseph J. Voccola & Associates<br>By: Edward J. McEnaney, III, Esq.<br>454 Broadway<br>Providence, RI 02909 |
| Court Reporter: | Angela M. Reynolds, RPR-FCRR<br>One Exchange Terrace<br>Providence, RI 02903 |

Court Interpreter Present

**(EXCERPT 25 JUNE 2004 - 10:00 A.M.)**

THE COURT: Good morning.

THE CLERK: This is criminal action 03-119, United States of America versus Hector Martinez-Torres.

MR. ROSE: Your Honor, had this matter proceeded to trial, the United States would have established the following facts: In October of 2003, a confidential informant who was working with the DEA identified the defendant, Hector Martinez-Torres, as a source of heroin and crack cocaine. On October 21, 2003, the CI and Martinez made arrangements for the CI to purchase one ounce of cocaine base for $1,000. When the CI arrived at Martinez's home located at 101 Barton Street in Pawtucket, Rhode Island as directed by Martinez, Martinez told them that he would send down his quote/unquote, "cousin." A second individual identified as co-defendant Jorge Cintron came downstairs to the CI's automobile and delivered the crack cocaine to the CI. The crack cocaine delivered on October 21st had a net weight of 27.9 grams. After this first delivery, Cintron became the principal contact with the CI. The drug transaction was videotaped.

On November 14, 2003, the CI again arranged to purchase an ounce of crack cocaine from the two

co-defendants. Martinez had moved to 84 Montgomery Street, Apartment Number 8, in Pawtucket, Rhode Island. The CI went to the defendant's new address. The defendant was not at home, but a third individual living in an adjoining apartment assisted the defendant (sic) and contacted co-defendant Cintron and Martinez. The neighbor --

THE COURT: Assisted the defendant?

MR. ROSE: I'm sorry, your Honor, I apologize, assisted the informant, assisted the informant and contacted Cintron and Martinez. The neighbor told Cintron over the telephone that the CI wanted another ounce of crack cocaine. The neighbor hung up the phone, told the CI that he was all set, and gave the CI a number for Cintron.

THE COURT: Well, just a moment. The neighbor, what do you mean the neighbor? Is this the third person that assisted the CI in making contact with Mr. Cintron?

MR. ROSE: Yes, your Honor.

THE COURT: So the neighbor, apparently, was involved in this also?

MR. ROSE: Certainly he made that telephone call. That neighbor was not charged, however.

THE COURT: And you say the neighbor assisted

the CI in contacting Mr. Cintron who had a telephone conversation with whom?

MR. ROSE: With the neighbor. He was relaying the conversation to the CI. He got Mr. Cintron on the phone and was relaying the conversation, 'got this guy here, he's looking for an ounce,' Cintron says 'okay.'

THE COURT: And was Mr. Martinez involved in this discussion?

MR. ROSE: Not at this time, your Honor. Not at that precise time. The neighbor hung up the telephone, told the CI he was all set, and gave the CI a number for Mr. Cintron. Later that day, the CI contacted Cintron by telephone and confirmed his order. Cintron told him that he would have to speak with defendant Martinez-Torres first. He referred to Martinez-Torres as Chino. Shortly thereafter, Cintron called the CI and told him that everything was all set. The CI went to the front of Martinez-Torres's apartment. The deal was made in front of the Montgomery Street address. Co-defendant Cintron provided the CI an ounce of crack cocaine in exchanges for $1,000. The drug transaction was videotaped. The net weight of the crack cocaine was 26.6 grams.

On November 21, 2003, the CI arranged another meeting with co-defendant Cintron to purchase one ounce

of crack cocaine for $1,000, along with 13 grams of heroin for $860. On the same day, the CI went to the front of the residence at 84 Montgomery Street and purchase the crack cocaine and heroin from Cintron. The crack cocaine purchased on the 21st had a net weight of 29.9 grams. The heroin had a net weight of 12.2 grams. The transaction was videotaped. During the transaction, the CI asked Cintron if he could purchase a half kilo of heroin, and Mr. Cintron answered, 'Yes, but we get it off of others when it's big like that.'

On November 25, before police executed a search warrant at the defendant's apartment, the defendant and the CI were recorded discussing the future heroin purchase. The defendant told the CI that the cost of the half-kilo would be the same as the November 21st purchase. The defendant told the CI the heroin would be available later in the day and that he didn't like to talk on the phone.

Later that day, November 25, agents executed a state search warrant at the 84 Montgomery Street apartment where they recovered personal items belonging to Mr. Martinez. In addition they seized $1,478 in cash, of which $400 was in marked bills, used to purchase the cocaine base and heroin on November 21,

2003.

Those are the essential facts, your Honor, in addition to the fact that if this matter had proceeded to trial, the United States would have presented a chemist, or a stipulation that the narcotics were, indeed, heroin and cocaine base. In addition, the Government would have prepared to present an expert witness that the cocaine base was in the form known as crack. The defendant has admitted in the plea agreement that the cocaine base sold on these dates was in the form known as crack.

THE COURT: All right, well, there are several new facts that are significant, Mr. Rose, in that revised proffer. One is that the defendant had moved to Montgomery Street, because the last proffer was that he lived at 101 Barton Street and that the second transaction was conducted at Montgomery Street.

Another factor is that Mr. Cintron stated that he would have to clear the transaction with Mr. Martinez. Another significant fact that has been presented is that the bills that were seized at Mr. Martinez's home when the search warrant was executed were some of the marked bills used in the November 21st transaction. So I think this is significantly different than the last proffer.

All right, Mr. Martinez, would you stand up, please. Did you hear everything that Mr. Rose said?

THE DEFENDANT: Yes, sir.

THE COURT: And do you agree that all of those things are true, and that if this case went to trial the Government would be able to prove them?

THE DEFENDANT: To tell you the truth is that I did commit a crime, I did something wrong, and basically on everything, but there is some situations, but I am guilty.

THE COURT: My specific question to you is are the facts as stated by Mr. Rose true? Do you agree that those things are true?

THE DEFENDANT: Some of them are true, some of them aren't.

THE COURT: Which things are not true?

THE DEFENDANT: That I never sold drugs in front of my apartment. And that the other person, the neighbor, that neighbor that supposedly contact me, those are lies. But of the other charges, I am guilty and I'm admitting them as the man that I am.

THE COURT: Okay, I just want to clarify one thing to make sure that I understand correctly what you are saying, Mr. Martinez. I don't believe Mr. Rose was saying that you personally sold any drugs in front of

your apartment. What he's alleging is that the drugs were sold to the informant by Mr. Cintron, but that Mr. Cintron was acting pursuant to an agreement with you; that he was in, effect, acting as your agent, so that you were responsible for the sale that he made, even though you didn't personally make those sales.

THE DEFENDANT: Me, honestly, I can say that I was involving with Jorge Cintron with two of those sales, but I wasn't in the two others.

THE COURT: Which two were you not involved in?

THE DEFENDANT: Well, when the time they came to my apartment looking for drugs and didn't find anything, and what happened in Walton (sic), but for the rest I cannot say that I'm responsible, I cannot accept responsibility for that.

THE COURT: Well, let me take the sales one at a time. The first sale referred to in the indictment occurred on October 21, 2003 in front of your apartment on Barton Street in Pawtucket.

THE DEFENDANT: That, yes, I accept that one, yes.

THE COURT: When you say you accept that, is it true that that sale was made by Mr. Cintron pursuant to an agreement with you and your instructions to him?

THE DEFENDANT: That is true.

THE COURT: The second sale referred to in the indictment occurred on November 14, 2003, and Mr. Rose said that that happened in front of the Montgomery Street address to which you had moved?

THE DEFENDANT: That is clear.

THE COURT: So in other words, when you say that is clear, you mean that you admit that you were involved in that sale as well?

THE DEFENDANT: That is true.

THE COURT: The third sale referred to in the indictment in count 4 is said to have occurred on November 21, 2003.

Did you say, Mr. Rose, that that also took place at the Montgomery Street address?

MR. ROSE: Yes, sir.

THE DEFENDANT: Yes.

THE COURT: So you admit that you were involved in that sale also?

THE DEFENDANT: Yes, your Honor, yeah, sir.

THE COURT: And the last sale is said to have occurred, it looks like we're talking about one sale of two different substances?

MR. ROSE: Yes, sir, at the same time, the same location, it was the ounce of crack and the $800 worth of heroin.

THE COURT: Those are the only sales that are alleged. Maybe one thing that might be confusing you here, Mr. Martinez, the sale that occurred on November 21, according to what Mr. Rose says and what the indictment charges, was a sale of two different substances, so the Government has brought that as two different counts in the indictment. They're not saying they were two different sales. So, in fact, there are three sales that the Government is talking about; one that occurred on October 21st in front of your Barton Street residence, one that occurred on November 14th in front of your Montgomery Street residence, and another one that occurred on November 21st in front of your Montgomery Street residence, but since that involved the sale of both crack cocaine and heroin, the Government has described that in two different counts.

THE DEFENDANT: But, Judge, my attorney showed me a video where it was taped, a transaction in front of the Walgreen's, but, your Honor, I was not involved, I didn't have anything to do with that transaction.

THE COURT: That's not the subject of this indictment, is it, Mr. Rose?

MR. ROSE: No, sir.

THE COURT: You're not being charged with that offense, Mr. Martinez.

MR. McENANEY: Your Honor, can I explain one thing to him, please, off the record.

THE COURT: Off the record, you want to talk to him privately?

MR. McENANEY: Yes.

THE COURT: All right.

(MR. McENANEY/DEFENDANT CONFERRING)

MR. McENANEY: Thank you, your Honor.

THE COURT: All right, so just to be clear now, Mr. Martinez, Mr. Rose did not refer to the transaction that occurred at Walgreen's in what he stated. I'm just asking you as to the transactions that he referred to, whether you agree that the facts that he stated were accurate, except for the statement that a neighbor called you on the telephone? But are all the other facts that he stated correct?

THE DEFENDANT: They are correct.

THE COURT: Now, as to the telephone call from a neighbor, I did not understand you, Mr. Rose, to say that the neighbor had called and spoken to Mr. Martinez directly. Were you claiming that?

MR. ROSE: No, sir. The neighbor telephoned and spoke to Mr. Cintron.

THE DEFENDANT: Judge, I also wanted to let you know that as a human being, I made a mistake, and I

know I harmed society and now I'm trying to change my life to better myself and not to go through the dark paths, and that's why I'm apologizing.

THE COURT: Those things will be considered at the time that you are sentenced, Mr. Martinez. Right now all I'm trying to determine is whether you admit that you did the things with which you are charged. The question of the penalty will be taken up at the time you are sentenced.

THE DEFENDANT: Tell him that I'm guilty.

MR. McENANEY: Thank you, your Honor.

THE COURT: Mr. Martinez, having heard everything that you have been told about the nature of the charges against you, the things the Government would be required to prove in order to convict you of those charges, the maximum penalties that could be imposed if your guilty plea is accepted, the rights that you would be giving up if you plead guilty, and everything else that you have been told, not only today, but at the previous two sessions when you have been in this courtroom, do you still wish to plead guilty to these charges?

THE DEFENDANT: Yes, I'm pleading guilty to these charges.

THE COURT: You may be seated, Mr. Martinez.

The Court finds that the defendant is fully competent, he's capable of entering an informed plea, he understands the nature of the charges, the elements that the Government is required to prove in order to convict him, the maximum penalties that could be imposed if the guilty plea is accepted, the rights that he is giving up by pleading guilty, and the Court also finds that he's making this decision voluntarily, because he feels it's in his best interest, and that there's a factual basis for the plea as set forth in the Government's proffer.

Therefore, the Court accepts the plea of guilty and hereby adjudges the defendant guilty of the offenses charged in counts 1 through 5 of the indictment.

Sentencing is scheduled for September 17 at 11 A.M. Prior to that time, Mr. Martinez, a Probation Officer will want to talk with you to gather facts for the presentence report -- something urgent, Mr. McEnaney?

MR. McENANEY: Yes, your Honor. Mr. Martinez is concerned about the sentencing date, being a professional prize fighter, he's running into some problems at Wyatt with certain --

THE COURT: We'll deal with the sentencing date

later. If you want to request a different date, we'll deal with it in a moment. Right now I'm trying to explain to him the process.

Someone from the probation department will want to talk with you to gather facts for the presentence report. That's a very important document because the Court relies very heavily on it in determining what sentence is appropriate. You may have Mr. McEnaney present when that interview takes place, and after the report is completed, you'll have the right to review it and to discuss it with Mr. McEnaney, and if you believe the report is incorrect in any way, you have a right to object to the report or whatever part you think is incorrect. If you wish to object to the report, you must submit your objection within writing within 14 days within which the report is first made available for you to review. It is not 14 days from the date you actually review it or 14 days from the date that you discuss with it Mr. McEnaney, it's 14 days from the date on which the report was available for you to review. If you do not object within that period of time, the Court will consider that you have forfeited or waived your right to object and it will treat whatever is in that report as being accurate.

In other words, after the 14 days has expired,

it's too late to challenge the report. Do you understand what I've just said?

THE DEFENDANT: Yeah, yeah.

THE COURT: Mr. McEnaney can help you in determining whether you ought to object, and if so, he can assist you in filing your objection. Also on the day set for sentencing, you will have the right to address the Court and say anything that you think should be considered in determining your sentence. Mr. McEnaney will have a chance to speak on your behalf also. You don't have to say anything at that time if you don't want to, but if you do wish to say something, you will be given that opportunity or you can let Mr. McEnaney do all of the talking for you. That decision is up to you.

**(END OF EXCERPT)**

C E R T I F I C A T I O N

I, Angela M. Reynolds, RPR-FCRR, do hereby certify that the foregoing excerpted pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Angela M. Reynolds

Angela M. Reynolds, RPR-FCRR

4-25-05

Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA | C.R. 03-119T |
| VS. | NOVEMBER 5, 2004 |
| HECTOR R. MARTINEZ-TORRES, a/k/a Canales | 11:00 A.M. |
| | PROVIDENCE, RI |

* * * * * * * * * * * * * * * *

BEFORE THE HONORABLE ERNEST C. TORRES

CHIEF DISTRICT JUDGE

**(SETENCING)**

APPEARANCES:

| | |
|---|---|
| FOR THE GOVERNMENT: | U.S. Attorney's Office<br>By: Richard W. Rose, Esquire<br>50 Kennedy Plaza<br>Providence, RI 02903 |
| FOR THE DEFENDANT: | Joseph J. Voccola & Associates<br>By: Edward J. McEnaney, III, Esq.<br>454 Broadway<br>Providence, RI 02909 |
| Court Reporter: | Angela M. Reynolds, RPR-FCRR<br>One Exchange Terrace<br>Providence, RI 02903 |
| Court Interpreter: | Jose Kleinberg |

**5 NOVEMBER 2004 - 11:00 A.M.**

THE COURT: Good morning.

THE CLERK: This is criminal action 03-119, United States of America versus Hector Martinez-Torres.

THE COURT: This is a continuation of the sentencing proceeding that was begun on September 17. Mr. Martinez has previously pled guilty to conspiracy with intent to distribute 50 grams or more of cocaine base and heroin and distribution, several counts of distribution of 5 grams or more of cocaine base, specifically in the form of cocaine base known as crack, and one count of distribution of heroin.

The matter was continued until today primarily because of some questions raised about whether some of the convictions referred to in the Presentence Report were convictions of this defendant or his brother. I believe those matters have all been cleared up since then, but let me just check with you, Mr. McEnaney. I know the probation officer did agree that some of the convictions were Mr. Martinez's brother and has eliminated them. Are there any further convictions that Mr. Martinez believes were not him?

MR. McENANEY: No, your Honor.

THE COURT: All right, I think you also had one other objection and that was that the convictions

referred to in Paragraphs 37 and 39 were convictions in the same case and that they had been dismissed. Has that objection been resolved?

MR. McENANEY: It has, your Honor.

THE COURT: And I believe it was resolved in the defendant's favor, the probation officer agreed that those convictions were not properly included; is that right?

MR. McENANEY: That's correct, Judge.

THE COURT: I'm not aware of any other objections to the Presentence Report. Are there any others by the Government or the defendant?

MR. ROSE: No objections, your Honor, just defendant's motion.

MR. McENANEY: No, your Honor, no objection.

THE COURT: I am aware that there is a motion for downward departure. I'll first ask the Clerk to append to the Presentence Report the correspondence that the Court has received. I assume that you have seen this; Mr. Rose, Mr. McEnaney, have you had an opportunity to see the letters that were sent?

MR. ROSE: Recently over the course -- over the course of time, there were a couple that were forwarded to me.

THE COURT: Well, I'll ask the Clerk to show the

letters to counsel just to make sure that they have seen them.

(LETTERS SHOWN TO MR. McENANEY and MR. ROSE)

MR. McENANEY: Thank you, your Honor.

MR. ROSE: Government's reviewed them, your Honor, thank you.

THE COURT: All right, the Court finds that the probation officer has correctly calculated the net offense level in this case as level 34, the criminal history category as category 6, and the guideline range as 262 to 327 months. That brings us to the motion for downward departure.

Mr. McEnaney?

MR. McENANEY: Thank you, your Honor. Your Honor, I filed this motion on behalf of the defendant pursuant to Section 4A1.3B1, essentially stating that some of the defendant's convictions in the Presentence Report certainly attributed to him, I believe, may have been overstated, and I'm asking your Honor to exercise what discretion you have in this matter to depart in a downward manner on behalf of Mr. Martinez based on the fact that one of the convictions that I'm referring to, although being a delivery of presumed cocaine was, in fact, false material, was not cocaine at all. I understand under the law it is still considered a

delivery; however, I think looking at Mr. Martinez as as a career offender, or a quote, "career drug dealer," your Honor, this specific case may require a little more scrutiny. He was at a very young age when it occurred, and as I said earlier, your Honor, it was false material. It, in fact, was not cocaine. He did plead to the charge and a sentence was imposed, your Honor, but I think in light of that charge with his other criminal contacts, it may be overstated as far as his career offender status. I think he's entitled to one criminal history category reduction, if the Court is so moved by the fact that, in fact, his criminal history may be overstated, at least in this one specific conviction.

Your Honor, I understand that the guideline range is 262 to 327 months, and this reduction, if so ordered, would only be a downward departure to, I believe, 235 to 293 months. But I think in light of the fact that some of the convictions were challenged because of Mr. Martinez's brother's involvement, and this one particular conviction that I'm referring to which was a delivery of false cocaine or some type of false substance --

THE COURT: Let's just correct that point, Mr. McEnaney, before we get too far. My understanding from

the -- and I think it's spelled out in the Presentence Report -- is that there were two kinds of conduct involved in that conviction. The conviction, actually, was for delivering a $15 bag of crack cocaine, and then apparently in addition to doing that, the defendant later met with the agent and gave him another bag, which he claimed was a controlled substance but testing showed that it wasn't. Is that what you're referring to?

MR. McENANEY: That's correct, your Honor. The initial $15 bag, I think, was supposed to be some type of sample, but Mr. Martinez has indicated to me that he had no intention of making the subsequent delivery, nor was he ever in possession of the cocaine to have made that delivery. Therefore, I think at the time he thought that he was, for lack of a better term, getting over on the buyer or alleged agent, when, in fact, it resulted in another conviction. But I think in light of the total circumstances of his criminal record and his previous history, this one conviction stands out as one that is, in my opinion and in Mr. Martinez's opinion, may be overstated and may warrant a downward departure. And that being said, your Honor, I do want to commend my brother, Mr. Rose, he did not object to my motion in this case, and, in fact, has been very

cooperative as far as exchanging information with me and trying to do what he feels is the fair and just thing on behalf of Mr. Martinez. And I'm not in the business of usually commending a prosecutor, but in this case I think it's warranted. Mr. Rose really believed that his hands were tied as well as mine, and the numbers were simply so high that maybe something along the lines of a reduction of a downward departure for grounds of fairness or a just sentence for Mr. Martinez was warranted, and I do wanted to commend him on that, your Honor.

That is basically our argument, it is that one conviction, and as you stated those are basically the facts, and I'll obviously leave it to your discretion if you think a downward departure is warranted based on the fact that his record may be overstated in that one particular matter.

THE COURT: All right. Mr. Rose, do you have anything to add to this? I know you did file an excellent memorandum on this subject, Mr. Rose. Do you have anything further to say?

MR. ROSE: I have nothing further to add, your Honor.

THE COURT: All right, I think the facts are very well spelled out in the Government's memorandum

here, the Government does not object to the downward departure and the Court feels that it's certainly warranted in this case. The defendant's criminal history, but for his classification as a career offender, I guess it is, would be criminal history 4, he's been classified as though he had a criminal history of 6, because he's a career offender, and as Mr. Rose points out and as Mr. McEnaney just argued, that status as a career offender is based on two prior felony convictions. It requires prior felony convictions for either violent crime or controlled substance offense, and one of the two convictions that makes Mr. Martinez a career offender here is that his controlled substance offense or one of the controlled substance offenses, was this matter that was just alluded to a few moments ago. He was convicted of having sold a 15 gram quantity of cocaine base, then delivering what he claimed was additional cocaine base when, in fact, it was not a controlled substance at all. That's about as low down the totem pole as you can get for a controlled substance offense that's a felony. So I agree that a downward departure here is warranted.

MR. McENANEY: Thank you, your Honor.

THE COURT: And as Mr. Rose has pointed out in

his memorandum, the Court is prohibited from departing downward more than one criminal history level, so, therefore, it will treat Mr. Martinez as having a criminal history category of 5, and that would make his guideline range 235 to 293 months instead of 262 to 327.

At this time, Mr. Martinez, you have the right to address the Court and say anything that you think should be considered in determining your sentence. Is there anything that you would like to say?

THE DEFENDANT: Yes. Quite frankly, I accept the mistake I made, I understand that I was on the wrong road by selling drugs that are not good to society. I understand that they killed my brother as a result. I know that this is going to cost me, I will have to modify my life towards a more positive future and see my children grow. What I ask you, Judge, is give me an opportunity, not to give me so much time so I can return to my family. I want to start working, I want to continue diving. If you believe that I have been disrespectful, your Honor, that has not been my intention, as well as to the U.S. Attorney, if at any point you believe I was disrespectful, as well as the young ladies here. I have to tell you that when I finish my time, you will not see me again. I will work

towards becoming a good member in society and to take advantage of good opportunities. That's all I have to tell you, and thank you for your time.

THE COURT: Mr. McEnaney?

MR. McENANEY: Your Honor, this has been a difficult case, I think, for all of us. Personally I have a lot of affection for Mr. Martinez. I have known him for a long time, and the facts of this case are such that I do not think it was feasible to proceed to trial, and we discussed the plea, and Mr. Martinez has assumed responsibility right from the beginning of this matter and I think he is to be commended for that.

Your Honor, he, as you know, despite several interruptions during this case, suffers from a mental disorder and an emotional disorder, and he's been medicated and prescribed serious medication for that disorder for a number of years. I'm not making excuses for Mr. Martinez's behavior nor his lifestyle, but there is definitely an emotional issue that he probably will have to deal with for the rest of his life. That being said, your Honor, I believe that Mr. Martinez is eligible or should be considered for the low end of the guidelines. I do appreciate your Honor granting our motion for a downward departure based on the motion that I made in Mr. Rose's memorandum.

As far as Mr. Martinez's background, your Honor, he's a high school graduate from Puerto Rico, he also attended the University of Puerto Rico, which was no small achievement in light of the fact that he did have a disability and a learning disability and tried to make a better life for himself. His family was involved in drug trafficking, and that was the one of the only opportunities he knew how to get out of Puerto Rico and he came to the U.S. mainland and continued in that activity and as a result, spent much of his adult life incarcerated. However, he is very proud of certain achievements that he has, being a father of three children, ages 15, 13 and 9, he takes his parenting, and although this may sound a little ludicrous in light of the profession that Mr. Martinez was in, takes his parenting very seriously and is more concerned about how this sentence is going to affect his children rather than himself. He's a grown man and is obviously willing to take responsibilities for his actions, but hopes that his children will learn from the mistakes that he has made and certainly maybe this will be a blessing rather than a curse, and those are his own words that he has expressed to me on several occasions. He has custody of his 15-year-old son, Jessie. He has been a Rhode Island resident for 15

years. He is a U.S. citizen, a communicant of St. Theresa's Church, and he is devout in his faith, believe it or not, your Honor. He is a professional boxer with 54 fights in the 154-weight class, he is a middle weight with a record of 51 and 3 with 22 knockouts. So he had an illustrious career in sports. However, when his boxing career began to wane, he picked up the only other profession that he knew, your Honor. That's what brought him here. He started in Puerto Rico, and then he had to do state time at the ACI, and now he is obviously facing a very substantial sentence in the federal system, your Honor. But he would prefer if he could stay in the Northeast upon his sentencing so his family can visit him, and certainly that's your discretion, your Honor.

But I think he really has learned his lesson and obviously he's going to make every effort to try to rehabilitate himself and turn his life around. He certainly is going to have enough time to do that. So your Honor, I think Mr. Martinez, based on the fact that he has taken responsibility for his action, is willing to do the time and is going to try to make the best of it. Based on the contacts that he has with the community and his willingness to try to turn his life around, your Honor, I'm asking that you consider

sentencing him to the low end of the guideline. Thank you.

THE COURT: Mr. Rose?

MR. ROSE: Nothing further to add, your Honor.

THE COURT: Does the Government have any recommendation on sentence, Mr. Rose?

MR. ROSE: I do, your Honor. I would ask that the Court sentence the defendant at the lowest end of the guideline range. I know what the Court's customary practice is, and frankly, one, we agreed to it in the plea agreement, so I advocate that position. But, secondly, your Honor, all things considered, 19 and-a-half years is a severe, fair, and just sentence, and I'd ask that that's what you sentence the defendant to.

THE COURT: Mr. Martinez, would you stand up, please, while the Court imposes sentence.

Based on what's been presented to me and the argument made by your attorney and the Government's recommendation, the Court will sentence you at the low end of the guideline range.

So I hereby commit you to the custody of the Attorney General for a period of 235 months, which is the minimum under the guideline range that applies in your case. Those sentences will be imposed on each of

the five counts of conviction and they will run concurrently with each other. The Clerk will also note on the Judgment Form the Court's recommendation that Mr. Martinez be assigned to an institution somewhere in the Northeast so that his family will be able to visit him.

MR. McENANEY: Your Honor, he had particularly requested Fort Devens --

THE COURT: Well, I think that's highly unlikely, I leave that to the Bureau of Prisons. I don't try to micromanage the assignments.

MR. McENANEY: Thank you, Judge.

THE COURT: That's a decision that the Bureau of Prisons makes, and properly so, because they know what facilities they have available and what type of facility is most appropriate for a particular defendant.

Following the completion of your sentence, I place you on supervised release for a period of 5 years on counts 1 through 4 and three years on count 5. Those terms also to be served concurrently. And as a condition of your supervised release, the Court will require that if you are deported by the immigration authorities -- wait a minute, what's your citizenship?

THE DEFENDANT: Puerto Rico.

THE COURT: Puerto Rico, so deportation is not an issue here.

The Court places you on supervised release, as I previously stated. As a condition of your supervised release, the Court will require that, if necessary, and I hope it isn't necessary by the time you are released from prison, but if necessary, that you undergo a program of substance abuse and mental health counseling and treatment to be determined by the probation officer, and the substance abuse treatment could require testing up to 72 times per year, I doubt very much that that would occur, but I do want the probation officer to have that discretion if necessary.

I'm not going to impose any fine here, because it doesn't appear that you have any assets with which to pay a fine. I am required to impose a special assessment of $100 on each of the five counts of conviction.

All right, you may be seated, Mr. Martinez. I don't believe there's any appealable issue here. You pled guilty, the Court actually departed downward and sentenced you at the low end of the guideline range that was produced by the downward departure, so I don't see what issue you could possibly raise on appeal, but you can talk to Mr. McEnaney about that, and if he

thinks there's any appealable issue, you can take whatever action may be appropriate.

Do you have anything further, Mr. Rose?

MR. ROSE: I don't, your Honor, thank you very much.

THE COURT: Mr. McEnaney?

MR. McENANEY: No thank you, your Honor.

THE COURT: Court will be in recess.

(ADJOURNED.)

C E R T I F I C A T I O N

I, Angela M. Reynolds, RPR-FCRR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

Angela M Reynolds

Angela M. Reynolds, RPR-FCRR

4-25-05

Date